IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CLARENCE W. BROOKS,           )
                             )
              Plaintiff,     )
                             )
                             )    CIV-14-283-HE
v.                           )
                             )
JERRY NILES, Sheriff, et al.,     )
                             )
              Defendants.    )

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983 alleging constitutional deprivations related to his previous confinement at the Garfield County Jail. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Before the Court are the Motion for Summary Judgment filed by Defendant Gay (Doc. # 33) and the Motion to Dismiss or in the alternative Motion for Summary Judgment filed by Defendants Niles, Bradley, and Stanley (Doc. # 35). Although given the opportunity to respond to Defendants' Motions on or before September 25, 2014, Plaintiff has not responded or requested an extension of time to respond. For the following reasons, it is recommended that Defendants' Motions be granted and that judgment issue in favor of Defendants and against the Plaintiff.

I. Garfield County Jail is not a named Defendant

Although Plaintiff named the Garfield County Jail as a Defendant in the caption of the

1

Complaint, Plaintiff did not name Garfield County Jail as a Defendant in the body of the Complaint. Plaintiff also did not include Garfield County Jail in the Pro Se Litigant's Request for Issuance of Summons (Doc. # 14). Therefore, Garfield County Jail was not served with a summons and copy of the Complaint, and Garfield County Jail is not a named Defendant in this action.

II. <u>Claims Related to Other Individuals</u>

In Plaintiff's Complaint filed March 20, 2014, Plaintiff has included numerous generalized allegations of mistreatment on behalf of other individuals in the jail. For instance, Plaintiff alleges there are "lots of people here with mental problems and this facility can do nothing to help us. When one of us mental patient[s] has problems they come with 4 or 5 people and tase you and put you in all kids [sic] of holds then they take you and take all your clothes away and strip you and put you in this cold room that feels like under 50 [degrees]. Some of us they put in a chair and tie us down in it and put us in that room that is below 50 [degrees] and on top of that there is a pole in the room for the handicapped that they handcuff the chair to. They also us[e] unnecessary force on prisoners that is uncalled for." Complaint, at 4.

To the extent Plaintiff alleges claims of inadequate medical care, the use of excessive force, or other claims on behalf of other detainees, Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. <u>See</u> <u>Fymbo v. State Farm Fire & Cas. Co.</u>, 213 F.3d 1320, 1321 (10th Cir. 2000)("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). Accordingly, Plaintiff's claims alleged in the Complaint on

behalf of other detainees should be DISMISSED without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).

III. Plaintiff's Claims

Plaintiff's Complaint names Garfield County Sheriff Jerry Niles, Garfield County Jail employee Nancy Stanley, Garfield County Jail employee Rhonda Bradley, and "Nurse" Vanessa Gay as Defendants. In count one of the Complaint, Plaintiff alleges only "medical." As support for this claim, Plaintiff alleges on page 6 through 10 of the Complaint (designated pages "6A1" through "6A6" by Plaintiff) a chronological history of his medical treatment, his requests for mental health treatment and personal items ("hygiene [sic] and envelopes and also my Bible studies . . . an[d] addresses"), and his administrative remedy requests to staff and grievances between September 25, 2013 and December 17, 2013. Generously construing this claim, Plaintiff asserts in count one that Defendants Gay, Bradley, and Stanley were deliberately indifferent to his serious medical needs because he was denied (1) access to a psychiatrist and (2) the medications Trazodone and Neurontin.[1]

Plaintiff also alleges in count one that the jail has a policy of requiring a copay for treatment by a nurse or doctor, but he does not specifically allege that this copayment denied him a constitutional right. Nor has he named any Defendant in this allegation.

In count two of the Complaint, Plaintiff alleges he was subjected to "cruel and unusual punishment." In support of this claim, Plaintiff contends that he was "not suicidal" but he

---

[1]Plaintiff has not named Defendant Niles in any allegation in count one of the Complaint.

wrote a letter to Defendant Bradley on September 30, 2013, and she interpreted the letter as indicating Plaintiff was suicidal. Plaintiff alleges that he was "tased," his clothes were removed, and he was "strapped . . . in a chair in a room that feels like 50 [degrees]." Plaintiff has named only Defendant Bradley in count two.

IV. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Factual allegations, as opposed to conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a

plaintiff's behalf").  A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits.  Hall, 935 F.2d at 1112.

Although Defendants Niles, Bradley, and Stanley have moved alternatively for either dismissal under Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56(a), the undersigned has considered matters outside of the pleadings and therefore will proceed to review Plaintiff's claims under the governing summary judgment standard, unless otherwise indicated.  Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court views the evidence and inferences drawn from the record in the light most favorable to the nonmoving party.  Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts which might affect the outcome of the suit under the governing law."  Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmoving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).  Rather, the moving party initially must only show "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324.  The nonmoving party "may not rest upon mere allegation[s]" in his or her

pleading to satisfy this requirement. <u>Anderson</u>, 477 U.S. at 256. Under Rule 56, the nonmoving party must respond by going "beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(quotations omitted).

V. <u>Undisputed, Material Facts</u>

Defendant Gay filed her Motion for Summary Judgment on September 4, 2014. In an Order entered the same day, the undersigned advised Plaintiff of his obligations in responding to the Motion under Fed. R. Civ. P. 56 and gave Plaintiff until September 25, 2014, to respond to the Motion. Order (Doc. # 34). In this Order, Plaintiff was advised that if he failed to comply with Rule 56 the Court could declare that the material facts set forth in the movant's statement of material facts are deemed to be admitted and established as true.

Defendants Niles, Bradley, and Stanley filed their dispositive motion on September 4, 2014. In an Order entered the same day, the undersigned advised Plaintiff of his obligations in responding to the Motion under Fed. R. Civ. P. 12 and 56 and gave Plaintiff until September 25, 2014, to respond to the Motion. Order (Doc. # 36). In this Order, Plaintiff was again advised that if he failed to comply with Rule 56 the Court could declare that the material facts set forth in the movant's statement of material facts are deemed to be admitted and established as true.

To this date, Plaintiff has not responded to Defendants' Motions. Plaintiff's failure to respond to Defendants' Motions could, in the exercise of the Court's discretion, prompt a sanction, including the dismissal of Plaintiff's action with prejudice or the entry of judgment against the Plaintiff. Issa v. CompUSA, 354 F.3d 1174, 1178 (10th Cir. 2003). However, a federal district court may not grant summary judgment pursuant to local procedural rules without conducting the determination required by Fed. R. Civ. P. 56©. Reed v. Nellcor Puritan Bennett, 312 F.3d 1190, 1193 (10th Cir. 2002). The litigant who fails to respond to a motion for summary judgment may nevertheless, consistent with local procedural rules, waive the right to controvert the facts asserts as undisputed in a motion for summary judgment. Id. at 1195. Accordingly, the undersigned will undertake the requisite Rule 56 analysis. Pursuant to LCvR 56.1©, the material facts set forth in Defendants' statements of material facts are deemed admitted for the purpose of resolving the Motions because the statements are not specifically controverted by Plaintiff.

The uncontroverted, material facts are as follows:

1. During Plaintiff's detention at the Garfield County Jail up through the date his Complaint was filed on March 20, 2014, the Grievance Procedure was found in Section 10 of the Garfield County Jail Policies and Procedures, as well as the Garfield County Inmate Handbook. The procedure requires a detainee to draft a grievance on a proper grievance form obtained from Detention Staff. The Inmate Handbook also shows that a formal grievance must be submitted within fifteen calendar days of the incident or when the detainee learned of an issue. A response to a grievance must be made within 10 days, and a detainee

may appeal any response or lack of response to the Sheriff, who shall respond in writing.

2. Defendant Sheriff Niles maintains a jail file of all Grievances filed by detainees. After a diligent search of Plaintiff's jail file, Sheriff Niles determined that Plaintiff filed seven formal grievances during the relevant period of time addressed by his Complaint.

3. Plaintiff Brooks was a detainee at the Garfield County Jail beginning September 23, 2013, when he was transferred to the Garfield County Jail from the Oklahoma County Detention Center.

4. During Plaintiff's booking process, a medical/mental screening was performed by Jailer Andre Napier. During that screening, Plaintiff indicated that he had received mental health services in the past. However, he gave no history of suicidal tendencies, and he reported he was not feeling suicidal at that time. Plaintiff indicated he wore eyeglasses, had dental issues, and had seizures.

5. A list of Plaintiff's current medications was also provided to the Garfield County Jail by the healthcare provider at the Oklahoma County Detention Center, along with a medical/psychiatric history listing seizures and schizophrenia. The list of medications stated that Plaintiff was taking Risperdal, Trazodone, Ibuprofen 800 mg., and Phenytoin (Dilantin).

6. On September 24, 2013, Defendant Gay consulted with the jail's physician, Dr. Taylor, by phone to discuss Plaintiff's health history and medications. Dr. Taylor approved all of Plaintiff's medications except for the Trazodone, which he did not believe was clinically indicated. Dr. Taylor also felt there was also a risk of drug interactions between Risperdal and Trazodone. Plaintiff began receiving these medications on September 24-25, 2013.

8

7.  Risperdal is an anti-psychotic medication mainly used to treat schizophrenia, and Phenytoin (Dilantin) is an anti-epileptic medication used to control seizures.  Trazodone is an anti-depressant medication.

8.  On September 25, 2013, Plaintiff submitted a request to staff form to Defendant Bradley, the jail's booking supervisor, requesting to see a psychiatrist and to obtain his "hygiene and envelopes and Bible studies out of my property an[d] addresses."  Defendant Gay responded to this request on September 25, 2013, informing Plaintiff that there was not a psychiatrist on staff at he jail, that there was mental health treatment available only for suicidal detainees, and that Plaintiff was welcome to see Dr. Taylor who was available at the jail every Monday.

9.  Plaintiff never filed a grievance related to his request for "hygiene," envelopes, "Bible studies," and addresses.

10.  On September 27, 2013, Plaintiff submitted a sick call request form which stated, "I need to see a psychiatrist because I'm mentally depressed and you don't know what I'm diagnosed with."  He also requested to have his blood level checked because he was taking Dilantin, and he requested Trazodone.

11.  Plaintiff submitted a grievance on September 29, 2013, requesting to see a psychiatrist.

12.  Defendant Gay, a licensed practical nurse in Oklahoma, is an employee of Advanced Correctional Healthcare, Inc., which has a contract with Garfield County to provide medical services for detainees confined in the Garfield County Jail, and she is a site nurse at the Garfield County Jail.

13.  Before a prescribed medication can be administered to a detainee at the jail, the

medication must be approved and/or prescribed by the jail's physician. As a nurse, Ms. Gay cannot prescribe medications.

14. To request non-emergency medical care at the Garfield County Jail, a detainee is required to fill out a sick call request form. Defendant Gay, as part of the medical staff at the jail, reviews sick call request forms on a daily basis, Monday through Friday.

15. On September 30, 2013, Defendant Gay arranged for Plaintiff to be seen and assessed by Dr. Taylor, M.D. Dr. Taylor sees detainees at the jail once a week and is on call the remainder of the time. When Plaintiff saw Dr. Taylor on that date, Dr. Taylor noted Plaintiff's chief complaint at that time was he "wants to increase psych medications." Dr. Taylor examined Plaintiff and took a history from him which revealed a mental health history of schizophrenia and seizures. Dr. Taylor discussed Plaintiff's mental health history, performed a physical, and determined that Plaintiff's medications should remain unchanged. Plaintiff was instructed to follow up if his symptoms increased.

16. Defendant Gay responded to Plaintiff's Grievance on October 1, 2013, and noted that he was seen by Dr. Taylor on September 30, 2013, and that he was currently prescribed the anti-psychotic medication Risperdal.

17. On September 30, 2013, Defendant Bradley received a letter from Plaintiff. The letter stated, "What if I really hurt somebody? Who would be the blame? When I lose control I have no feelings I feel like nothing in the world can hurt me, I don't care if I live or die there would be nothing ya'll could do to me that I would feel." Based on her concern that he was experiencing suicidal and/or homicidal ideation, Defendant Bradley placed Plaintiff on

suicide watch.

18. On suicide watch, a detainee is checked every 15 minutes on cameras in the cell and the detainee must wear a special suit, called a suicide smock, that cannot be torn up and has no belt. A log is kept on the detainee.

19. During the time that Plaintiff was on suicide watch, he was placed for 2 ½ hours in a restraint chair. Restraint chairs are used by the staff at the Garfield County Jail: (1) when a detainee has demonstrated violent or uncontrollable behavior, (2) to prevent self injury, injury to others, or property damage, (3) upon recommendation by medical providers, (4) upon request of a detainee who indicates they are having injurious thoughts, or (5) as a means of combating detainee safety from one area to another. Plaintiff was put in a restraint chair at 10:45 p.m. when he was kicking the door, and he was let out of the chair when he went to court at 1:15 p.m. Once Plaintiff returned from court, he was not placed in a restraint chair for the remainder of the time that he was on suicide watch.

20. Ms. Amy Frantz, a licensed professional mental health counselor, performs a Suicide Risk Assessment and determines whether the detainee should stay on suicide watch. Plaintiff was assessed by Ms. Frantz on October 2, 2013 Plaintiff denied suicidal or homicidal ideations, but admitted to having anxiety and hostility and experiencing racing thoughts, which were causing him to have violent thoughts and making it hard for him to sleep. Ms. Frantz authorized his release from suicide watch at 12:00 p.m. on October 2, 2013. She recommended that Plaintiff be seen in the medical clinic for assessment of his need for medication.

21.  The suicide watch rooms are usually maintained at a constant temperature between 71 degrees and 74 degrees Fahrenheit.  No employee or agent of the jail ever informed Sheriff Niles that any room at the Garfield County Jail was ever below 50 degrees Fahrenheit, and it is not noted in any records related to Plaintiff.

22.  On October 2, 2013, Plaintiff submitted a sick call request form stating that he "talked to lady after she got me off suicide [and] she told me to fill out medical slip to get my meds increased to a higher dosage."

23.  On October 6, 2013, Plaintiff submitted a grievance in which he stated he was not suicidal and should not have been placed on suicide watch.  Defendant Stanley responded to this grievance and explained that she would check into the incident.  Plaintiff did not submit a grievance concerning his placement in a restraint chair.

24.  On October 6, 2013, Plaintiff submitted a grievance in which he complained that he was not being prescribed Trazodone and that the jail needed to hire a psychiatrist.  Defendant Stanley responded to this grievance and explained her understanding as to why Plaintiff was receiving the medications he was receiving.

25.  Defendant Gay arranged for Plaintiff to be seen by Dr. Taylor.  On October 7, 2013, Dr. Taylor saw Plaintiff and noted Plaintiff's chief complaint was "depression (asking for Trazodone)."  Dr. Taylor document his assessment as "history of depression," and he ordered/prescribed Prozac 40 mg. daily for Plaintiff, as well as Tylenol 1000 mg.  Prozac is an anti-depressant medication that was prescribed by Dr. Taylor to treat Plaintiff's depression, as opposed to the anti-depressant Trazodone, which in Dr. Taylor's opinion has

more potential side effects. Plaintiff began receiving this medication on October 8, 2013. The Tylenol medication was prescribed to treat pain and anxiety. Plaintiff was instructed to follow up if his symptoms increased.

26. On October 9, 2013, Plaintiff submitted a request to staff form in which he asked why he was not "on my Trazodones and my Neurontins." Defendant Gay responded to the request on October 20, 2013, and advised Plaintiff she could not explain Dr. Taylor's "thought processes."

27. On October 16, 2013, Plaintiff submitted a grievance in which he again asked to be prescribed Trazodone and asking that Dr. Taylor be replaced by a different doctor. Defendant Gay responded to this grievance and advised Plaintiff the issue had already been addressed by Dr. Taylor.

28. On October 16, 2013, Plaintiff submitted a sick call request form in which he requested to obtain mental health services in the same manner as medical and dental services and threatening to file a civil complaint.

29. Since October 7, 2013, Defendant Gay assessed Plaintiff in the jail's medical office for various medical conditions and complaints and timely responded to his sick call request forms. Dr. Taylor also personally examined Plaintiff since October 7, 2013, and consulted with Defendant Gay concerning Plaintiff's medical conditions on several occasions. Dr. Taylor also adjusted Plaintiff's medications as necessary.

30. In the opinion of Dr. Taylor, Plaintiff received appropriate care and treatment for his medical and mental health issues during his detention in the Garfield County Jail.

31. Plaintiff never filed any grievances related to the Jail's policy of requiring copayments from detainees to see a nurse or doctor, and Sheriff Niles never received any appeals of any grievances from Plaintiff.

32. Defendant Gay never tased Plaintiff or placed him in a restraint chair. She also never participated in Plaintiff's cell assignments.

33. Whenever a Taser is used on a detainee at the Garfield County Jail, a Use of Force Report is drafted and maintained in a Use of Force file.

34. Defendant Sheriff Niles performed a diligent and thorough search of all Use of Force Reports during the time period of Plaintiff's allegations in the Complaint, and no Use of Force Report related to Plaintiff Brooks was ever created. To Sheriff Niles' knowledge, a Taser was not used on Clarence Brooks during his detention at the Garfield County Jail.

35. None of Plaintiff's grievances concerned the use of a Taser.

36. Defendant Bradley is the booking supervisor at the Garfield County Jail, and she previously served as acting co-jail administrator from September or October, 2013 through November 2013, along with Defendant Stanley, who is the supervisor over the kitchen at the Garfield County Jail. Neither Bradley nor Stanley are aware of the use of Tasers on Clarence Brooks during his detention at the Garfield County Jail.

VI. Exhaustion of Administrative Remedies

Defendants Niles, Bradley, and Stanley move for summary judgment on the ground that Plaintiff has failed to exhaust available administrative remedies with respect to his claims of use of excessive force and unconstitutional conditions of confinement alleged in

counts one and two of the Complaint.

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).

To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

Defendants must therefore demonstrate the absence of a disputed material fact on the issue of exhaustion. See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). If Defendants satisfy this burden, Plaintiff would incur the obligation to "demonstrate with specificity the existence of a disputed material fact. If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Id.

The uncontroverted procedure for exhausting administrative remedies for detainees confined in the Garfield County Jail is a three-step process, including a request to staff and a grievance. The procedure states that a detainee may appeal a response or non-response to a grievance to the sheriff, in this case, Defendant Niles.

It is undisputed that Plaintiff did not submit a grievance to Garfield County Jail officials regarding the alleged use of a Taser, the use of a restraint chair, or the alleged unconstitutional conditions of his confinement while he was in suicide watch for two days. Plaintiff's grievance complaining that he was placed on suicide watch when he was not suicidal does not exhaust his available administrative remedies with respect to the alleged unconstitutional conditions of confinement or the use of excessive force while he was on suicide watch between September 30, 2013 and October 2, 2013. Defendants Niles, Bradley, and Stanley are therefore entitled to summary judgment[2] with respect to Plaintiff's claims against them in counts one and two of the Complaint of unconstitutional conditions of

---

[2]Defendant Gay is not named in count two of the Complaint. Defendant Gay is also not named as a Defendant in count one with respect to the alleged denial of Plaintiff's personal items or the jail's policy of requiring a co-payment for medical treatment.

confinement or the use of excessive force during the two-day period in which he was placed in suicide watch at the jail.

As to any implied claims asserted in count one regarding Plaintiff's request for "hygiene," envelopes, "Bible studies," and addresses, it is undisputed that Plaintiff never filed a grievance related to this alleged deprivation. Further, it is undisputed that Plaintiff never filed any grievances related to the Jail's policy of requiring copayments from detainees to see a nurse or doctor. Finally, it is undisputed that Sheriff Niles never received any appeals of any grievances from Plaintiff. Defendants Niles, Bradley, and Stanley are therefore entitled to summary judgment[3] with respect to these claims.

## VII.  Deliberate Indifference to Medical Needs

In count one of the Complaint, Plaintiff asserts Defendants Gay, Niles, Bradley, and Stanley were deliberately indifferent to his medical needs. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from unconstitutional conditions of confinement. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). Accord, Lopez v. LeMaster, 172 F.3d 756, 759 n.2 (10th Cir. 1999)("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment.").

---

[3]Defendant Gay is not named in count two of the Complaint. Defendant Gay is also not named as a Defendant in count one with respect to the alleged denial of Plaintiff's personal items or the jail's policy of requiring a co-payment for medical treatment.

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998)(citation omitted). See City of Revere v. Mass. General Hospital, 463 U.S. 239, 244 (1983)(recognizing pretrial detainees' Due Process Clause protections are "at least as great as the Eighth Amendment protections available to a convicted prisoner").

The Eighth Amendment "imposes duties on [prison and jail] officials who must provide humane conditions of confinement; prison [and jail] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994)(quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). The Supreme Court's opinion in Farmer provides the framework for evaluating Plaintiff's claim in count one.

To prevail on a claim of failure to protect or provide medical care or safe conditions under the Eighth Amendment, an inmate must show he was "incarcerated under conditions posing a substantial risk of serious harm," and that prison officials were deliberately indifferent to the inmate's health or safety. Farmer, 511 U.S. at 834, 837. "A claim of deliberate indifference includes both an objective and a subjective component." Al-Turki v. Robinson, 762 F.3d 1188, 1192 (10th Cir. 2014). "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was 'sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause.'" Id. (quoting Mata v. Saiz, 427 F.3d 745, 753 (10th Cir. 2005)). "The subjective prong examines the state of mind

of the defendant, asking whether 'the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837).

A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(quotation marks and citation omitted).

"'[D]eliberate indifference' is a stringent standard of fault." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). Prison or jail officials cannot be found liable under this standard unless they subjectively knew of and disregarded an excessive risk to the inmate's health or safety by failing to take reasonable measures to abate the risk. Farmer, 511 U.S. at 837, 847. "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999). Moreover, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Id.

Assuming that Plaintiff's need for mental health care during his detention at the Garfield County Jail was a serious medical need, the uncontroverted facts show that Defendant Gay promptly responded to Plaintiff's sick call requests for mental health care and that Plaintiff was repeatedly treated for his mental health issues by the jail's physician, Dr. Taylor, with medications for his schizophrenia and later for his depression and anxiety. "If ... the medical professional knows that his role in a particular medical emergency is solely

to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care." Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000). Plaintiff has not shown that any Defendant acted with deliberate indifference in denying him access to a psychiatrist or to particular medications for treatment of his mental impairments. Plaintiff denies that he was suicidal at the time he was placed under suicide watch on September 30, 2013, and Plaintiff has not demonstrated that the medications prescribed by Dr. Taylor were inadequate to treat his mental impairments.

Despite Plaintiff's denial that he was suicidal at the time he was placed under suicide watch at the jail on September 30, 2013, the uncontroverted contents of the letter he submitted to Defendant Bradley demonstrate that she acted reasonably in interpreting Plaintiff's letter as indicating Plaintiff was suicidal or homicidal and placing Plaintiff under suicide watch at the jail. There are no facts indicating that Defendant Gay or Dr. Taylor were aware of the letter Plaintiff sent to Defendant Bradley. Plaintiff was released from suicide watch two days later at the recommendation of a mental health professional, who assessed Plaintiff and determined he was not suicidal.

There are no material facts for trial with respect to Plaintiff's allegation in count one of deliberate indifference to his serious medical needs, and Defendants Gay, Niles, Bradley, and Stanley are entitled to summary judgment with respect to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs.

To the extent Plaintiff alleges his constitutional rights were violated because he was denied two medications, Trazodone and Neurontin, that he had previously been prescribed, Defendants Gay, Stanley, Bradley, and Niles are not medical professionals capable of prescribing medications for Plaintiff, and he has not sued Doctor Taylor, the physician who provided him medical treatment and prescribed medications for Plaintiff at the jail. Thus, Defendants Gay, Stanley, Bradley, and Niles are entitled to summary judgment with respect to this claim.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant Gay's Motion for Summary Judgment (Doc. # 33) be GRANTED and that judgment issue in favor of Defendant Gay and against the Plaintiff. It is also recommended that Defendants Niles, Bradley, and Stanley's Motion for Summary Judgment (Doc. #35) be GRANTED and that judgment issue in favor of Defendants Niles, Bradley and Stanley and against the Plaintiff. It is further recommended that any claim alleged in the Complaint on behalf of other detainees be DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ____October 29th_, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421,

1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____9th_____ day of _____October_____, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE